## THE LOUISE F.

(District Court, S. D. Florida. November 28, 1923.)

No. 1832.

1. **Customs duties** ⬅129, 130—**Intoxicating liquors** ⬅246—**Foreign vessel, brought into American waters by pirates, held not subject to penalties or forfeiture.**

A foreign vessel, with a cargo of liquors, bound from one foreign port to another, which was forcibly seized by armed pirates, who imprisoned her, officers and brought her into waters of the United States, where they unloaded a part of her cargo, *held* not subject to penalties of forfeiture under the customs laws (Tariff Act 1922, §§ 583, 585, 586 [Comp. St. Supp. 1923, §§ 5841h2, 5841h4, 5841h5]), or National Prohibition Act (Comp. St. Supp. 1923, § 10138¼ et seq.).

2. **Customs duties** ⬅86—**Foreign vessel, forciby brought into port of United States, held not required to give bond under Tariff Act.**

A foreign vessel, seized by United States officers when beyond the three-mile limit, after pirates in control thereof had landed liquors, *held* not required to give bond for customs duties under Tariff Act 1922, §§ 441, 442 (Comp. St. Supp. 1923, §§ 5841e10, 5841c11).

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Admiralty. Suit by the United States against the British auxiliary schooner Louise F. Decree for claimant.

W. M. Gober, U. S. Atty., of Tampa, Fla., Harry W. Reinstine and Maynard Ramsey, Asst. U. S. Dist. Attorneys, both of Jacksonville, Fla., for the United States.

Cockrell & Cockrell, of Jacksonville, Fla., for claimant.

CALL, District Judge. On November 5, 1923, the Louise F., a British auxiliary schooner, laden with liquor, was seized by the United States customs authorities, accompanied by prohibition officers and deputy United States marshals, some four or five miles off shore and was brought into the port of Jacksonville, Fla., and there held by the customs authorities until November 13th, when she was libeled by the United States, charging the violation of the National Prohibition Act (Comp. St. Supp. 1923, § 10138¼ et seq.), the unlawful unloading of certain merchandise, the refusal of the master of the schooner to deliver to the customs officers the original and copy of the manifest as required by section 583 of the Tariff Act of 1922 (Comp. St. Supp. 1923, § 5841h2), the violation of section 585 of said Tariff Act (section 5841h4), and the violation of section 586 of said act (section 5841h5), and praying for forfeiture of said vessel and cargo, and the collection of the several penalties prescribed by the section of the said Tariff Act charged to have been violated.

Thereupon an attachment of said vessel and cargo was made and the marshal of this district has since been in control. A claim and answer were made on behalf of the owners, denying the charges in said libel and setting up that shortly after the vessel commenced her voyage from Nassau, bound for a foreign port, one of her crew, together with two other persons, seized said vessel from the legal officers, took entire charge of her, deprived the legal officers of all control, brought the vessel within American waters, and landed certain portions of the cargo of liquor, without the consent of such officers and crew, and prayed for the dismissal of the libel and for the return to the owners of said vessel and cargo.

[1] Testimony was taken before me upon the issues. This testimony shows without contradiction that the vessel sailed from Nassau, N. P., bound for Halifax, N. S., about 1 o'clock on one day and at about 4:30 a. m. of the next day, while the vessel was on the high seas, one of the members of the crew, in conjunction with two other persons not connected with the vessel, overpowered the officers and crew, confined them most of the time in the forecastle, and brought the ship into American waters, and on Sunday night landed a portion of the cargo of liquors on the beach at a point between St. Augustine, Fla., and Pablo Beach; that on account of the heavy seas running the yawl boat used in landing, the liquor could not be launched after the last trip, and one of the three men that seized the ship was left on shore; that the members of the crew who were forced to navigate the vessel escaped in the darkness, and reported the seizure of the vessel to parties whom they met on the beach and to police officers of St. Augustine. On Monday the tugboat Three Friends spoke the schooner,

and again the report of the seizure was made and request made for them to notify United States officials of same; that shortly after the Three Friends hove into sight two fishing boats were seen to leave the schooner; that the two of the three who had seized the schooner departed from her on these fishing boats, taking again a portion of the cargo of liquor, and said boats were pointed out to the Three Friends and request made to overhaul them; that shortly after the Three Friends spoke the schooner the government boat with United States officials aboard arrived, and these fishing boats were again pointed out and the same request repeated. The government officials took possession of the vessel and brought her into port of Jacksonville, and the officials of the customs house and of the marshal's office have been in possession of her since arrival in port; that no firearms of any kind were found on the vessel; that the three persons who seized the schooner were armed with pistols. It does not appear that any attempt was made to overhaul the fishing boats. Under this state of facts the law seems to be clear that neither the vessel nor her officers incurred any penalty under the Tariff Act of 1922, nor forfeiture under the National Prohibition Act, and that the libel must be dismissed.

[2] At the conclusion of the argument request was made by the proctors for the government that the vessel and owners be required to give bond in the amount of the customs duties as required in section 442 of the Tariff Act of 1922 (Comp. St. Supp. 1923, § 5841e11). Section 441 of the act (section 5841e10) prescribes what vessels are not required to enter in the customs house, among them being vessels in distress, and section 442 of the act provides for giving the bond asked in this case, after the report and entry of said vessel. It does not seem to me that the section is applicable to the facts of this case. The vessel was seized by the officers when out of the three-mile limit, and was forcibly brought within the three-mile limit by the parties, who had forcibly taken charge of the schooner, and they only abandoned her when it became apparent that assistance was near. To require under these circumstances a bond from the owners would be adding to the hardships already suffered by the said owners in the seizure in the first place by the three armed persons, and then by the customs officers who had evidently gone out to her with the idea of coping with pirates, and then the subsequent detention since November 5th.

The only request that was made by the legal officers of the schooner was that the pirates should be apprehended. To this request no attention seems to have been paid. It is proper that every precaution should be taken to prevent the unloading of any portion of the cargo of liquors within American territory; therefore the decree of the court will provide that officers of the customs service will remain on board said vessel after her delivery to the owners until she departs from the United States and until she reaches the three-mile limit.

In addition to the above, the decree will be entered dismissing the libel at the cost of libelant, and for delivery of the vessel and cargo to the owners or their agents.