## UNITED STATES v. EAGLE INDEMNITY CO.

(District Court, E. D. Virginia. January 27, 1926.)

1. Customs duties ☞63—Foreign vessel entering port in distress or for fuel or supplies, remaining 24 hours, is required to make entry (Tariff Act 1922, §§ 435, 441 [Comp. St. §§ 5841e4, 5841e10]).

Under Tariff Act 1922, §§ 435, 441 (Comp. St. §§ 5841e4, 5841e10), providing that foreign vessels entering a port of the United States shall make entry at the custom house within 48 hours thereafter, but excepting vessels arriving in distress or for the purpose of taking on bunker coal or oil or necessary stores, "which shall depart within 24 hours after arrival," a vessel so entering in distress or for fuel or supplies, but remaining more than 24 hours, is required to make entry, and is subject to all provisions of the Act applicable to such vessels.

2. Customs duties ☞86—United States may recover full penalty of bond given for release of cargo for foreign port on failure of vessel to produce evidence that it was not smuggled into this country.

Tariff Act 1922, § 442 (Comp. St. § 5841e11), provides that any vessel having on board merchandise destined to a foreign port may, after entry, proceed to such foreign port with such cargo without unloading or payment of duty, but may be required by regulation of the

Secretary of the Treasury to give bond equal to the estimated duty conditioned that the merchandise shall not be landed in the United States without entry, and for production of evidence of compliance with such condition. Under the regulations of the Secretary the vessel is required to produce within six months certificate of landing of the merchandise at port of destination. *Held*, that such bond is not one of indemnity, but to assure performance of a statutory requirement, and that, on failure to produce the required certificate, the United States is entitled to recover the full penalty of the bond without proof of actual damage or loss.

At law. Action by the United States against the Eagle Indemnity Company. On demurrer to declaration. Overruled.

Paul W. Kear, U. S. Dist. Atty., and Lither B. Way, Sp. Asst. Dist. Atty., both of Norfolk, Va., for the United States.

Cleaton E. Rabey, R. Baldwin Myers, and Rixey & Rixey, all of Norfolk, Va., for defendant.

Memorandum of Court's View upon Demurrer.

GRONER, District Judge. In February, 1924, the Cuban vessel, G. H. Murray, arrived at the port of Norfolk in distress and for repairs. She had on board a cargo of alcohol shown by her manifest to be destined to St. Pierre, Miquelon.

As the necessary repairs could not be made within 24 hours, she was required, under section 435 of the Tariff Act of 1922 (42 Stats. at L., p. 951), being Comp. St. § 5841e4, to make formal entry at the customhouse, and this was done. On her departure the collector of customs, before issuing clearance, required a bond in the sum of $10,000, conditioned as follows:

"(1) If the said principal shall pay to the collector of customs of the said port promptly on demand the sums chargeable under law and regulations in conformity therewith for services performed for said vessel by customs officers, and shall promptly pay any dues, charges, penalties, or other sums legally due the United States from any master or owner of said vessel on account of said vessel;

"(2) And if the said principal shall save the United States and the said collector harmless from all losses and liabilities which may occur by reason of the granting of any permit or license to said vessel to discharge or take on cargo, equipment, baggage, ballast, fuel, or other articles at night, on Sundays, or holidays, or to land, place, or store the same on lighters or on piers, landing places, or on spaces adjoining thereto, and if same shall not be removed therefrom until proper permits have been presented;

"(3) And if all articles shown on the manifest of said vessel to be destined for other United States customs ports or for foreign ports are landed at the destination stated, and proof thereof is furnished the said collector in the form and within the time required by law and regulations or any lawful extension thereof;

"(4) And if complete manifest of all cargo of said vessel destined for foreign ports or noncontiguous territory of the United States and shippers' export declarations and pro forma declarations therefor are delivered to the said collector in the form and manner and within the time prescribed in sections 4197 and 4200, Revised Statutes [Comp. St. §§ 7789, 7792, Treasury Decision No. 35969 of Dec. 14, 1915, and other regulations or laws relating thereto:

"Then this obligation shall be void, otherwise it shall remain in full force and effect."

[1] Recovery is asked for the full amount of the bond for failure to deliver within the six-month period the landing certificate showing delivery of the merchandise at destination. The defense is, first, that the bond was obtained without legal authority, and is void; and, secondly, that, even if valid, it was no more than an indemnity to secure to the United States the payment of all lawful customs duties, and that, unless and until something on this account is shown to be due, nothing may be recovered.

My view is that the first point is without merit. Section 435, supra, requires every foreign vessel arriving within the limits of any customs district to "make entry" within 48 hours, and section 441 (42 Stats. at L., p. 952), being Comp. St. § 5841e10, excepts from this rule "vessels arriving in distress or for the purpose of taking on bunker coal, bunker oil, or necessary sea stores and which shall depart within 24 hours after arrival." It is insisted on the part of the defendant that the limitation of 24 hours contained in the section just above quoted applies only to vessels taking on bunker coal, etc., and not to vessels arriving in distress, and the Louise F. (D. C.) 293 F. 933, is cited in support of this position. The facts in that case were essentially different from those in this, for there the vessel was forcibly brought into port under arrest. In this she came in voluntarily. The statute itself makes no distinction between vessels arriving in distress and those arriving for fuel or supplies. In either case, if they remain longer than 24 hours, they are required to "report and enter." It would seem manifest, therefore, that, after the lapse of 24-hour period, the status of the vessel, though seeking our harbor solely for the purpose of making repairs, partook of the character of any other vessel arriving in port either for the purpose of obtaining supplies or of unloading a part of her cargo, and that she thereafter, in the same measure, became subject to all the provisions of section 442 of the Tariff Act (Comp. St. § 5841e11), one of the provisions of which required the giving of the bond sued on in this case.

[2] The second point of defense is more difficult. The distinction between those bonds in which the sum named in the bond is to be treated as a fixed penalty, which the court may not alter or reduce, and those in which it is to be treated as the maximum amount of the obligation incurred by reason of its breach, and in which a recovery is limited to the damages actually proved, is not always easy to make, and no set rule or formula appears in the decided cases. Undoubtedly, when a specified penal sum is prescribed by a statute as a fixed penalty imposed after a breach of a statutory duty, the full amount may be recovered irrespective of the actual damages shown. It is equally true, I think, that, where the form of the bond is one of indemnity, or compensation for damages, the amount of recovery is limited to a showing under one or the other of these headings. In the instant case the act of Congress under which the bond sued on was required to be given was passed in protection of the public revenue, and its object was to secure payment, and also to prevent fraud. Consequently, it was provided that, in every case of a vessel arriving at an American port, and having on board merchandise destined to a foreign port, she might, after report and entry, proceed to such foreign port free of the payment of duty, etc., by giving bond in a sum equal to the estimated value of the cargo, conditioned that she would land none of the merchandise within the United States, and would, in due time, produce evidence of this fact. The act (section 442) in express terms provides that the bond to be taken by the collector shall be "in an amount equal to the estimated duties conditioned that no merchandise shall be landed in the United States from such vessel without entry therefor having been made and a permit secured from the customs officer and for the production of such landing certificates or other evidence of compliance with such bond as the Secretary of the Treasury may by general regulations require." The regulations so authorized (article 1118, Customs Regulations of 1923) in like terms provide: "The landing certificate herein provided for must be produced within

six months from the date of exportation," etc.

It seems to me, after mature reflection, to be obvious that the condition to furnish landing certificate—the evidence of compliance with the bond—is not a mere incident of the contract, but is rather a statutory requirement imposed for the purpose of assuring the Treasury that the released merchandise has not been smuggled into the United States; an agreement whereby the United States says, in effect: "We will relieve you of surveillance, allow you unobstructed navigation of our harbors and coasts, on condition that upon arrival at your intended destination you will furnish us with evidence that you have complied with your agreement not to land your goods upon our shores." In many particulars the bond here sued on is not unlike that construed by the Supreme Court in the case of the United States v. Dieckerhoff, 202 U. S. 302, 26 S. Ct. 604, 50 L. Ed. 1041, and is in most respects unlike that construed in the United States v. Zerbey, 271 U. S. 332, 46 S. Ct. 532, 70 L. Ed. 973 (decided May 24, 1926). In the former, the obligor in a bond, given under the act of Congress permitting an importer of merchandise to remove the same from the custody of the government into his own custody upon condition to keep the same in all respects intact, and to return it upon demand for examination and appraisement for customs duties, was upon breach thereof held liable for the full amount of the bond, and the government was not required to prove any actual loss or damages. The statute there, as here, provided that the collector should take bond, there in double the amount of, here in an amount equal to, the estimated value of the merchandise. The primary purpose in each case was to prevent fraud upon revenue, and the method of effecting it was, in one case, to require, at the option of the government, the return of the specific article, that its character, and thereby the duty chargeable to it, might be ascertained in the other to require evidence in a definite form that the duties which the United States has foreborne to collect had not thereafter been fraudulently avoided by an unlawful delivery of the dutiable merchandise within the United States. At page 310 (26 S. Ct. 607) Mr. Justice Day, speaking to the court, says:

"But we think the purpose of the statute and the purpose of the requirement in the bond provided for therein, and the one given in this case, was to secure the performance of the duty imposed of returning the package or packages, where an importer availed himself of the privilege of withdrawing merchandise from the custody of the governmental officials before it has been examined and appraised. It is the right of the government to examine merchandise imported from foreign countries and ascertain its value for the purpose of fixing the amount of duties collectible thereon. It has the right to hold this merchandise until this purpose can be effected. Obviously, in a country where the business of importing goods has become so vast, as is now the case in the United States, it would be impracticable to store all goods and hold them until examination. The law has, therefore, provided for the detention usually of one package in ten of an importation, and given the privilege to the importer of removing the rest of the goods, but to be held intact subject to the right of the government, if an examination of the packages ordered for inspection shall suggest such course, to require that other packages be returned intact for examination, and if this statutory duty is not performed, we think it was the intention of the law to provide specific damages to be recovered upon the nonperformance of the duty imposed, and to secure a prompt and faithful discharge of which the statute provides for the giving of a bond.

"In carrying out this purpose we hold the law permitted the taking of such a bond as was given in this case, providing that if the party did not return the package required he should pay double the amount of the value thereof. We think such undertaking, for this manner of discharging this duty, or paying the value stipulated, was intended to and does relieve the government from the necessity of showing any actual damage or loss."

In the Zerbey Case, supra, in which it was held that no recovery could be had except upon proof of damage, the bond, as well as the statutory authority for it, was essentially different from the bond sued on here and that enforced in the Dieckerhoff Case, as is apparent from the opinion. The bond there was given in order to secure a permit to sell distilled spirits for other than beverage purpose, and was conditioned that the principal should fully and faithfully comply with all the requirements of the laws of the United States respecting the sale and use of distilled spirits, etc. In pursuance of authority granted by the act, the commissioner of internal revenue had prescribed the terms and conditions of the bond, and had adopted and issued two forms; one to be executed by corporate or personal sureties, the other by the deposit of collateral. The conditions of the two

forms were not identical. In the case of the surety bond the condition was to comply with the laws of the United States, etc. In the case of the collateral bond the condition was that upon default the collateral so deposited might be sold and the proceeds applied to the payment of any internal revenue taxes, interest, or penalty which might be due. The decision was to the effect that the two bonds were for an identical purpose, and that the condition in the latter should be read into the former, and that, therefore, under the very terms of the bond itself, the obligation was discharged upon the payment of taxes, interest, penalties, etc., in the event of breach.

There is no such condition in the bond in question here. As has already been said, its two conditions were not to land the merchandise and to furnish evidence of that fact by showing its carriage to destination. It is not claimed in the declaration that the merchandise was in fact landed in the United States, but it is claimed that it was not carried to destination, and that by reason of this fact the contract has been breached, and the United States is under no obligation to ascertain what was its final delivery place, but is entitled to the full penalty. Whether the United States is entitled to recover the full amount if it shall be subsequently shown in this case, or in a suit in equity, that the vessel's cargo has never been brought into the United States, it is unnecessary at this point to decide, but, as the case now stands, my conclusion is that the demurrer should be overruled. I think it equally true, notwithstanding the amended demurrer showing that in some of the recitals in the bond it is erroneously stated that the same was executed in pursuance of an inapplicable statute.

The motion to strike the special pleas is denied; the demurrer will be overruled; and the case will stand for trial.

### Judgment of Court.

On the 3d day of December, 1926, came the parties and their attorneys, and plaintiff, United States of America, by its attorneys, moved the court to strike out defendant's special plea No. 3 heretofore filed in these proceedings, upon the ground that said special plea is insufficient in law, which motion was thereupon argued by counsel for the respective parties. And the court without expressing any opinion at said time as to the sufficiency of the said special plea, and without passing thereupon, overruled the said motion, to which action and ruling of the court plaintiff by counsel excepted.

And thereupon, on December 23, 1926, this cause came on for trial, and the court being of opinion that said special plea No. 3 sets up an equitable defense within the meaning of section 274 (b) of the Judicial Code (Comp. St. § 1251b), upon motion of defendant by counsel, proceeded to dispose of said special plea in the same manner as if this were a suit in equity, and, having heard all of the evidence offered by the parties upon the issue raised by said special plea No. 3 and the argument of counsel thereon, overruled the said special plea, to which action of the court in overruling the said special plea defendant by counsel then and there duly excepted.

And thereupon the court, by agreement of plaintiff and defendant thereto, which agreement is here entered of record, proceeded without the intervention of a jury to hear and determine the remaining issues in the case, and, the court having heard all of the evidence offered by the parties, respectively, upon the remaining issues, and the argument of counsel thereon, it is considered by the court and so ordered that plaintiff, United States of America, do have and recover of and from defendant, Eagle Indemnity Company, a corporation, the sum of $10,000, the penalty of the bond sued on, with interest thereon at the rate of 6 per cent. per annum from this date until paid and plaintiff's costs by it in this behalf expended. To which action and ruling of the court in refusing to enter judgment for the defendant upon the pleadings and the evidence, and in entering judgment in favor of the plaintiff thereon, defendant by counsel duly excepted.

And, the defendant having indicated its intention of appealing this case to the United States Circuit Court of Appeals for the Fourth Circuit, it is hereby adjudged and ordered that execution upon the judgment herein rendered be, and the same hereby is, suspended for 90 days from this date, upon said defendant, or some one for it, executing a bond in the penal sum of $11,000, with good and sufficient surety, and conditioned according to law; and leave is hereby granted defendant to file its bills of exception within 60 days from this date.